**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Green Fili, LLC, an Arizona limited liability company,<br><br>         Plaintiff,<br><br>v.<br><br>United States Liability Insurance Company, a Nebraska company,<br><br>         Defendant. | No. CV-23-00655-PHX-DGC<br><br>**ORDER** |

This case involves an insurance coverage dispute stemming from a lawsuit against Plaintiff Green Fili, LLC. Plaintiff asserts breach of contract and related claims against Defendant United States Liability Insurance Company. Doc. 1-3 at 5-19. Defendant has filed a motion for summary judgment. Doc. 13. The motion is fully briefed and neither side requests oral argument. For reasons stated below, the Court will grant the motion.

**I.    Background.**

The following facts are not disputed for purposes of summary judgment. Plaintiff operates a Filiberto's restaurant located in Tempe, Arizona. Doc. 16 ¶ 6. In August 2021, several former employees of the restaurant filed a civil complaint in state court alleging that Plaintiff had failed to pay them minimum wages and overtime pay in violation of the Fair Labor Standards Act and various state laws (the "Lawsuit"). Docs. 14 ¶ 4, 16 ¶ 9; *see*

Doc. 14-1 at 60-76. An amended complaint was filed in the Lawsuit and served on Plaintiff in November 2021. Docs. 14 ¶ 5, 16 ¶ 10; *see* Doc.14-1 at 78-117.[1]

Between 2016 and 2023, Plaintiff was insured under employment practices liability insurance policies issued by Defendant (the "EPL Policies"). Doc. 16 ¶ 2. The EPL Policies are "claims made" policies – they limit coverage to certain employment-related claims first made against an insured during the respective policy period and reported to Defendant within that period or a specified time thereafter. The EPL Policy at issue here was in effect from January 8, 2021 to January 8, 2022 (the "21-22 Policy"). Docs. 14 ¶ 1, 16 ¶ 3; *see* Doc. 14-1 at 3-28. The 21-22 Policy was renewed for an additional one-year period, from January 8, 2022 to January 8, 2023 (the "22-23 Policy"). Docs. 14 ¶ 2, 16 ¶ 4; *see* Doc. 14-1 at 33-58.

The allegations in the Lawsuit qualify as a "Claim" under the 21-22 Policy. Doc. 14 ¶ 7. Plaintiff first reported that Claim to Defendant on March 30, 2022. Docs. 14 ¶ 8, 16 ¶¶ 16-17. On April 11, 2022, Defendant denied coverage under the 21-22 Policy's Notice of Claim provision because Plaintiff did not report the Claim within 60 days after the Policy expired on January 8, 2022. Docs. 14 ¶ 14, 16 ¶¶ 18-19; *see* Docs. 14-1 at 15-16, 123-26.[2] The Lawsuit was settled and dismissed in September 2022. Doc. 1-3 at 8, ¶ 23.

Plaintiff brought this action in March 2023, alleging that Defendant wrongfully denied coverage under the EPL Policies. *Id.* at 5-26. Specifically, Plaintiff alleges that because each successive EPL Policy was renewed between 2016 and 2023, the "continuum of coverage" resolved any discrepancies with respect to timely notice of the Claim. *Id.*

---

[1] *See also Guadarrama v. Green Fili, LLC*, No. CV2021-013286; Judicial Branch of Arizona, Maricopa County, *Civil Court Case Information*, https://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseInfo.asp?caseNumber=CV2021-013286 (last visited Oct. 9, 2023).

[2] No coverage exists under the 22-23 Policy because the Claim was not first made during that policy period (January 8, 2022 to January 8, 2023). *See* Docs. 13 at 6-7, 14 ¶ 15, 14-1 at 123-24; *see also Tucker v. Am. Int'l Grp., Inc.*, No. 3:09-CV-1499 CSH, 2015 WL 403195, at *10 (D. Conn. Jan. 28, 2015) (courts enforce the plain language of claims made policies "to hold there is no coverage when the claim is made before the operative date of the policy").

2

at 7-8. Plaintiff asserts state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, intentional misrepresentation, and bad faith. *Id.* at 8-18. Defendant moves for summary judgment on all claims. Doc. 13.

## II. Legal Standards.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Arizona law, the interpretation of an insurance policy is a question of law for the court to decide. *See Univ. Mech. Contractors of Ariz., Inc. v. Puritan Ins. Co.*, 723 P.2d 648, 650 (Ariz. 1986); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000).[3] The provisions and undefined terms of an insurance policy must be construed according to their plain, ordinary, and everyday sense. *See Keggi*, 13 P.3d at 788 (citing *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982)); *Ariz. Prop. & Cas. Ins. Guar. Fund v. Dailey*, 751 P.2d 573, 575 (Ariz. Ct. App. 1987). An ambiguity exists only when the language of the policy is unclear and reasonably can be construed in more than one sense. *See Roberts v. State Farm Fire & Cas. Co.*, 705 P.2d 1335, 1337 (1985) (citing *Sparks*, 647 P.2d at 1132).

## III. Discussion.

### A. Claims Made Policies vs. Occurrence Policies.

In addressing the parties' arguments below, it is important to consider the differences between a "claims made" policy and an "occurrence" policy. An occurrence

---

[3] The 21-22 Policy does not contain a choice-of-law provision. Both parties cite Arizona law as controlling, and the Court will do the same. *See* Docs. 13 at 5-10, 15 at 4-8.

3

1  policy of liability insurance covers certain negligent or wrongful acts of the insured that
2  occur within the policy period, regardless of the date of discovery or the date a claim is
3  made against the insured.  This type of policy generally requires that notice be given to the
4  insurer within a specified time after the insured event.  Because discovery of the insured
5  event may not occur until years after the occurrence policy has expired, an extended
6  exposure time, or "tail," is created.  Occurrence policies with a "tail" that extends beyond
7  the policy period pose a problem for the insurer because it cannot calculate the premium
8  for the risk with any certainty.  To reduce exposure to an unpredictable and lengthy "tail"
9  of claims made years after the occurrence policy has expired, insurers shifted to claims
10 made policies.  *See Thoracic Cardiovascular Assocs., Ltd. v. St. Paul Fire & Marine Ins.
11 Co.*, 891 P.2d 916, 919 (Ariz. Ct. App. 1994).

12        A claims made policy differs from an occurrence policy in several important
13 respects.  A claims made policy covers an insured only for claims made against it during
14 the policy period.  *See Thoracic Cardiovascular*, 891 P.2d at 920.  "Such a policy has the
15 distinct advantage for the insurer that when the policy period ends without a claim having
16 been made, the insurer can be certain that the policy will not expose it to any further
17 liability."  *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 771 (1993).  Notice of the
18 claim typically is required to be given during the policy period or within a specified amount
19 of time after the policy expires.  *See Thoracic Cardiovascular*, 891 P.2d at 920.  Because
20 it triggers coverage, "the notice of the claim to the insurer is the most important aspect of
21 the claims made policy."  *Id.*

22        A claims made policy provides less coverage than an occurrence policy, but the
23 limited coverage "is not without a corresponding benefit to the insured: in claims made
24 policies, risk exposure is terminated at a fixed point and, as a result, underwriters may more
25 accurately predict an insurer's potential liability.  This decreased risk allows insurers to
26 supply claims made policies at a lower price, thereby benefitting insureds."  *Physicians
27 Ins. Co. of Wis. v. Williams*, 279 P.3d 174, 177 (Nev. 2012); *see Checkrite Ltd., Inc. v. Ill.
28 Nat'l Ins. Co.*, 95 F. Supp. 2d 180, 191-92 (S.D.N.Y. 2000) ("The existence of a cut-off

date is integral to a claims-made policy, as it is a distinct characteristic of such a policy that directly relates to rate setting. The insurer is afforded greater certainty in computing premiums, since it does not need to be concerned with the risk of claims filed long after the policy period has ended, and as a result the insured may benefit from lower premiums.") (cleaned up); *Shareplus Fed. Bank v. Heath*, No. 1:08-CV-1859-GET, 2010 WL 11601878, at *5 (N.D. Ga. Sept. 13, 2010) ("With a claims-made insurance policy, the insurer undertakes a more limited risk than an insurer who issues an occurrence policy; insurers typically charge higher premiums for occurrence policies to compensate for their exposure to indefinite future liability."); *PCCP LLC v. Endurance Am. Specialty Ins.*, No. 12-CV-0447-YGR, 2013 WL 4384245, at *6 (N.D. Cal. Aug. 13, 2013) ("[Claims made] policies do not countenance extensions for last-minute claims, but . . . such policies are valid as a matter of public policy because they allow insurers to offer low premiums[.]").[4]

### B.     The 21-22 Policy.

The 21-22 Policy clearly is a claims made policy. The Policy states at its outset:

> This is a Claims Made Policy. This Policy covers only those Claims first made against the Insured during the Policy Period or Extended Reporting Period, if purchased.

Doc. 14-1 at 18; *see id.* at 5 (same in the Policy Declarations).

The 21-22 Policy defines its Policy Period as "the period from the effective date of [the] Policy as set forth in the Policy Declarations, to the expiration date or effective date of cancellation or non-renewal, if any." Doc. 14-1 at 19 (§ III.N). The Policy Declarations set forth an effective date of January 8, 2021. *Id.* at 5. And the Policy specifically identifies the "Policy Period" as running "From: 01/08/2021 To: 01/08/2022." *Id.* at 3, 5. Because

---

[4] Insureds under a claims made policy may protect themselves against last-minute claims and gaps in coverage by purchasing an extended reporting period. *See Thoracic Cardiovascular*, 891 P.2d at 922; *PCCP*, 2013 WL 4384245, at *6. Plaintiff had the right to purchase an extended reporting period for the 21-22 Policy, but did not do so. *See* Docs. 14 ¶ 13, 14-1 at 14-15.

the Policy was not cancelled or non-renewed, the Policy Period thus ran from the January 8, 2021 effective date until the January 8, 2022 expiration date.[5]

The 21-22 Policy covers Claims first made against an insured during the Policy Period, but only if the Claims are timely reported to Defendant. Specifically, the Insuring Agreement provision states:

> The Company will pay on behalf of the Insured, Loss in excess of Retention not exceeding the Limit of Liability . . . that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period . . . . Such Claim[s] must be reported to the Company in accordance with Section IX herein.

*Id.* at 14 (§ I.A).

Section IX contains the Notice of Claim provision under which Defendant denied coverage for the Lawsuit. Docs. 14 ¶ 14, 16 ¶ 18. That provision states, in relevant part:

> As a condition precedent to exercising any right to coverage under this policy, an Insured shall give to the Company written notice of a Claim, as soon as practicable but: (a) if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than sixty (60) days after the expiration date or effective date of such cancellation or non-renewal.

Doc. 14-1 at 15.

**C.    The Parties' Arguments.**

Defendant argues that under the clear and plain language of the 21-22 Policy, no coverage exists for the Lawsuit because the Policy expired on January 8, 2022 and Plaintiff did not report the Claim to Defendant within 60 days after the expiration date. Doc. 13 at 8-12. The Court agrees.[6]

---

[5] Plaintiff had the right to cancel the 21-22 Policy by providing written notice to Defendant, and Defendant could cancel the Policy if Plaintiff failed to pay the premium when due. If Defendant refused to renew the Policy, it was required to provide written notice of non-renewal to Plaintiff not less than 60 days before the end of the Policy Period. *See id.* at 24 (§ X). As noted, the 21-21 Policy was not cancelled or non-renewed.

[6] Defendant argues, in the alternative, that Plaintiff did not report the Claim "as soon as practicable." Doc. 17 at 3, 6-7. The Court need not address this argument given the ruling in this order, and the Court will not otherwise consider it because it was first made in Defendant's reply brief. *See* Doc. 17 at 6-7.

There is no dispute that the 21-22 Policy was not cancelled or non-renewed and no extended reporting period was purchased. Docs. 13 at 9, 14 ¶ 13, 15 at 6, 9. By its express terms, then, the 21-22 Policy expired at the end of the Policy Period on January 8, 2022. Doc. 14-1 at 5, 19. As a condition precedent to coverage, Plaintiff was required to give Defendant notice of the Claim by March 9, 2022 (60 days after the January 8 expiration date). Doc. 14-1 at 15. The notice was given on March 30, 2022, 21 days late. Docs. 14 ¶ 8, 16 ¶¶ 16-17.

"Unlike a mere contract term, the breach of which must be material before it excuses another party from performing, one party's failure to fulfill a condition precedent entirely excuses any remaining obligations of the other party." *Biltmore Bank of Ariz. v. First Nat'l Mortg. Sources, L.L.C.*, No. CV-07-936-PHX-LOA, 2008 WL 564833, at *7 (D. Ariz. Feb. 26, 2008). Because timely notice is a condition precedent to coverage under the 21-22 Policy, and Plaintiff failed to satisfy that condition, no coverage exists and Defendant had no obligation to indemnify Plaintiff for any amount it paid to settle the Lawsuit or for any attorney's fees or costs it incurred in reaching the settlement. *See* Doc. 13 at 9; *Thoracic Cardiovascular*, 891 P.2d at 923 ("[T]he condition requiring the insured to provide notice of a claim during the policy period is a material part of the agreed exchange. No coverage exists unless notice is given during the policy term."); *Supima v. Phila. Indem. Ins. Co.*, No. CV-20-00617-PHX-SPL, 2021 WL 2454052, at *8 (D. Ariz. June 16, 2021) (finding no coverage under a claims made policy where the plaintiff failed to "report claims made against it to [the] insurer within 60 days of the policy period's end"); *Capitol Specialty Ins. Corp. v. Big Sky Diagnostic Imaging, LLC*, No. CV 17-54-BLG-SPW-TJC, 2019 WL 1245642, at *10 (D. Mont. Jan. 30, 2019) ("[T]he Court concludes a claim was made against Big Sky during the 2015 Policy period. But because it was not reported until after expiration of the 60-day extended reporting period, there was no coverage under the 2015 Policy."); *Inn-One Home, LLC v. Colony Specialty Ins. Co.*, 521 F. Supp. 3d 495, 504-05 (D. Vt. 2021) ("Inn-One was obligated to provide notice of [the] claim during the 'policy

period,' which ran from the Policy's effective date to its expiration date, in order to satisfy a condition precedent to coverage.").

Plaintiff makes several arguments in opposition to the motion for summary judgment. None has merit.

Plaintiff argues that the language of the Notice of Claim provision is ambiguous and the ambiguity creates an issue of fact precluding summary judgment. Doc. 15 at 4-5. But there is nothing ambiguous about the provision or the 21-22 Policy as a whole. The Notice of Claim provision clearly explains that if no extended reporting period is purchased, the insured is required, as a condition precedent to coverage, to give Defendant notice of a claim no later than 60 days after the expiration date of the 21-22 Policy or the effective date of any cancellation or non-renewal of the Policy. Doc. 14-1 at 15. The expiration date applies here because there was no cancellation or non-renewal. The 21-22 Policy clearly identifies its expiration date as January 8, 2022. *Id.* at 3, 5. Thus, the unambiguous language required Plaintiff to give Defendant notice of the Claim no later than 60 days after January 8, 2022. *See* Docs. 13 at 8-9, 17 at 3-4; *see also EurAuPair Int'l v. Ironshore Specialty Ins. Co.*, 787 Fed. Appx. 469, 470 (9th Cir. 2019) (finding no ambiguity where the policy required the insured to report claims "as soon as practicable but in no event later than thirty (30) days after the end of the [defined] Policy Period").

Because the 21-22 Policy was renewed, Plaintiff argues, the "as soon as practicable" language applies and there is no reason to go beyond the word "but" in the Notice of Claim provision. Doc 15 at 5. Stated differently, Plaintiff contends that renewal negates the requirement to provide notice of a claim within 60 days after the expiration date. *Id.* at 5-6. But this argument ignores the actual Policy language and seeks to delete the word "expires" and strike a condition precedent to coverage. *See* Doc. 13 at 9.

"To require an insured to report a claim in accordance with the agreed terms of a policy is neither illogical nor inequitable. *Capitol Specialty*, 2019 WL 1245642, at *10. In order to relieve Plaintiff of the consequences of its decision to not timely report the Claim to Defendant, the Court "would be required to rewrite a fundamental term of the

policy and extend coverage beyond that contracted to provide." *Id.* The Court declines to do so.[7]

Plaintiff contends that because the 21-22 Policy was renewed for another one-year period, it did not expire or "come to an end." Doc. 15 at 6-9. By its express terms, however, the policy came to an end on one of three specified dates: the expiration date or the earlier of either the cancellation or non-renewal date. Doc. 14-1 at 3, 19, 24. Because the Policy was not cancelled or non-renewed, it came to an end on its expiration date, January 8, 2022.

In a similar vein, Plaintiff contends that the successive renewals of the EPL Policies provide Plaintiff with seamless coverage for all claims made between January 8, 2016, when the initial EPL Policy became effective, and January 8, 2023, when the 22-23 Policy was non-renewed. Doc. 15 at 6-9. But nowhere in the 21-22 Policy or in any other EPL Policy identified by Plaintiff does it say that renewal creates a continuous period of coverage during which an insured may report claims. This argument ignores the nature of a claims made policy and impermissibly would convert such a policy "into an occurrence policy for any claim which arises during the span of consecutive policy periods." *Capitol Specialty*, 2019 WL 1245642, at *9.

It must be remembered that the reporting period defines coverage under a claims made policy. "To read an 'inherent' extended reporting period into a renewal policy would create a long and unbargained-for 'tail' of liability exposure, the avoidance of which forms the conceptual framework for claims made coverage in the first instance." *Checkrite*, 95 F. Supp. 2d at 194 (cleaned up). "This conceptual framework applies where a policy is renewed, as well as when it is not, since each policy year represents an agreement as to a specific period during which claims made and reported will be covered." *Id.*

---

[7] Plaintiff was aware of the claims in the Lawsuit as early as September 2021, but did not give notice to Defendant until March 30, 2022. Docs. 14 ¶¶ 6-7, 14-1 at 119. Plaintiff explains that it attempted to settle the Lawsuit early to avoid protracted and costly litigation, and did not learn that settlement would require Defendant's involvement until Plaintiff received an "egregiously high" settlement demand on March 29, 2022. Docs. 15 at 2-3, 16 ¶¶ 11-17. Plaintiff does not argue that the purported reason for its notice delay relieves it of the contractual obligation to give notice within 60 days after the 21-22 Policy expired.

Plaintiff cites no legal authority to support its seamless coverage argument. *See* Doc. 15 at 6-9. Courts which have confronted the argument have "concluded that a renewal does not extend the reporting period for claims made during the earlier policy period." *Id.* (citations omitted); *see Tucker*, 2015 WL 403195, at *15 ("[E]ach individual policy, although a renewal, had its own Policy Period within which claims could be filed. . . . Once the 2003 Policy (and any specified grace period) terminated, the insurers were entitled to rest assured that claims from prior years were no longer covered after the reporting period ended."); *Inn-One Home*, 521 F. Supp. 3d at 505 ("Inn-One's proposed construction of the Policy would extend the applicable time limit for providing notice beyond the 'policy period' to include any subsequent renewal term. This interpretation is not supported by the Policy's language and would 'rewrite unambiguous terms in a policy to grant one party a better bargain than the one it made.'") (citation omitted); *GS2 Eng'g & Env't Consultants, Inc. v. Zurich Am. Ins. Co.*, 956 F. Supp. 2d 686, 695 (D.S.C. 2013) (rejecting the argument that "all policies should be treated as a single continuous policy or the reporting period for the 2009 Policy should be extended into the 2010 Policy Period"); *PAMC, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 2:18-CV-06001-SVW-AS, 2019 WL 666726, at *6 (C.D. Cal. Feb. 12, 2019) ("Plaintiff argues that the policy periods under each installment of the Policy should be treated as one contiguous policy period due to the successive renewals of the Policy. Plaintiff is incorrect as a matter of law. Courts . . . have consistently recognized that . . . the renewal of a policy does not extend a policy's reporting period."); *Ehrgood v. Coregis Ins. Co.*, 59 F. Supp. 2d 438, 446-47 (M.D. Pa. 1998) ("The Ehrgood Plaintiffs contend . . . that renewal of the 1996-1997 policy, in effect, operates as an extended reporting period under that policy. . . . This approach, however, ignores the nature of the policy at issue. Each of the three policies issued by Coregis is a claims-made policy, [and] an extension of the notice period in a 'claims-made' policy constitutes an unbargained-for expansion of coverage[.]") (citation omitted). In short, the renewal of the 21-22 Policy "did not serve to extend the . . . Policy's reporting period beyond the 60-day

extension expressly written into the contract." *Capitol Specialty*, 2019 WL 1245642, at *10.[8]

### D.  Summary Judgment is Warranted on All Claims.

Defendant argues that because there is no coverage for the Lawsuit as a matter of law, summary judgment is warranted on all claims. Doc. 13 at 2, 12. The Court agrees.

Each claim asserted in the complaint is based on Defendant's denial of coverage for the Lawsuit. Doc. 1-3 at 8-18; *see id.* at ¶¶ 34, 40, 49, 60, 77. Because there is no coverage as a matter of law under the unambiguous Policy language, Defendant did not breach the 21-22 Policy, unjustly enrich itself, make misrepresentations, or act in bad faith. The Court will grant summary judgment on all claims. *See BOKF, NA v. First Am. Title Ins. Co.*, No. CV-16-02630-PHX-SPL, 2017 WL 11631008, at *4 (D. Ariz. Dec. 11, 2017) ("Because Plaintiff's breach of contract claim fails as a matter of law, it follows then that its breach of implied covenant claim must also fail."); *Kaufmann v. Geico Gen. Ins. Co.*, No. CV 09-51-M-JCL, 2010 WL 11534141, at *10 (D. Mont. Feb. 1, 2010) ("[T]he undisputed evidence demonstrates that Geico did not misrepresent the terms of the policy's UIM coverage and [plaintiff's] claim to the contrary thus fails as a matter of law."); *Kondaur Cap. Corp. v. Fid. Nat'l Title Ins. Corp.*, No. 1 CA-CV 12-0295, 2013 WL 1908018, at *3 (Ariz. Ct. App. May 7, 2013) ("[B]ecause Kondaur had no valid claim under the [policy], Kondaur's claim for bad faith fails because Old Republic had a reasonable basis to deny coverage."); *see also Great Am. Assurance Co. v. PCR Venture of Phoenix LLC*, 161 F. Supp. 3d 778, 787 (D. Ariz. 2015) ("Arizona courts have repeatedly held that the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment.") (citations omitted).

///

---

[8] Plaintiff notes that the policy number, EPL15559591, essentially stayed the same between 2016 and 2023 and only changed each year with the addition of an alpha character at the end of the number. Doc. 15 at 10. But the new alpha character changed the policy number. And in any event, the use of a similar policy number does not change the clear meaning of the term "expire" or otherwise provide seamless coverage under the successive claims made policies.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 13) is **granted**.

2. The Clerk of Court shall enter judgment in favor of Defendant and terminate this action.

Dated this 12th day of October, 2023.

*David G. Campbell*
_____
David G. Campbell
Senior United States District Judge